# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Young v. Johnson*, 2011 IL App (2d) 110287

| | |
|---|---|
| Appellate Court Caption | J. NORMAN YOUNG, as Trustee of the J. Norman Young Trust, Dated September 16, 1993, and as Successor Trustee of the Nadyne H. Young Trust, Dated September 16, 1993, Plaintiff-Appellant, v. CHRISTINE J. JOHNSON, De Kalb County Collector; SHARON HOLMES, De Kalb County Clerk; KATHLEEN HOLLONBECK, d/b/a KGH Investments; DOUGLAS JOHNSON and SUSAN JOHNSON, d/b/a Tax Lien Investments; and THE TOWN OF CORTLAND, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-11-0287 |
| Filed | December 29, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from plaintiff's failure to pay the special service area taxes on property he owned, the trial court properly dismissed plaintiff's complaint seeking a declaratory judgment that the sale of the taxes was not an available remedy and seeking a writ of *mandamus* to compel foreclosure on the delinquent parcels and an injunction based on plaintiff's partial payment of the total tax obligation, since plaintiff could not establish a "clear right" to relief and he forfeited his argument based on partial payment. |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 10-MR-122; the Hon. Melissa S. Barnhart, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Craig J. Cobine and John F. Philipchuck, both of Dommermuth, Brestal, Cobine & West, Ltd., of Naperville, for appellant. |
| | Robert K. Bush and Parker H. Johnson, both of Ancel Glink Diamond Bush DiCianni & Krafthefer, PC., of Chicago, for appellee Town of Cortland. |
| Panel | PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion. |
| | Justices Bowman and Hutchinson concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, J. Norman Young, appeals the dismissal under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2010)) (affirmative defense) of his complaint. For the following reasons, we affirm the dismissal.

¶ 2                                    I. BACKGROUND

¶ 3    This is plaintiff's third appeal before this court concerning the imposition and collection of a special service area tax (SSA tax) imposed upon property known as the Young Farm. See *Young v. Holmes*, No. 2-09-0151 (modified upon denial of rehearing July 9, 2010) (unpublished order under Supreme Court Rule 23) (affirming the trial court's dismissal of plaintiff's challenge to the constitutionality and validity of the SSA); *Young v. Johnson*, No. 2-10-0020 (2010) (unpublished order under Supreme Court Rule 23) (remanding plaintiff's tax objection challenge to 2008 SSA taxes on limited grounds such as technical errors or miscalculations–not constitutionality and validity). To recap this court's prior rulings, we found the SSA tax to be lawful overall, but we allowed plaintiff to challenge any miscalculations through tax objection proceedings.

¶ 4    Plaintiff, along with 11 other owners, planned to develop the farm and the surrounding area into a residential subdivision. The proposed development needed a sewage treatment facility, which would be paid for with the SSA tax. Each owner would pay for the treatment facility based on how many lots each planned to develop (at a cost of $8,000 per lot for access to the treatment facility). Because plaintiff alone planned to develop over 500 lots, his share of the SSA tax was quite large, totaling over $4 million to be paid in amounts of approximately $270,000 per year over a number of years. Initially, the new treatment facility would be funded by the sale of special revenue bonds, structured under a trust indenture between the Town of Cortland and Wells-Fargo Bank. The bonds would be paid for from

revenues generated by the SSA tax. Plaintiff purchased $420,000 in bonds issued in conjunction with the SSA, putting him in the unique position of being both an owner of property subject to the SSA tax *and* a bondholder who would receive a portion of the SSA tax proceeds.

¶ 5        Due to economic conditions, such as the decline in the housing market, the residential development was never completed. However, plaintiff was still obligated to pay the SSA tax for the treatment facility (which was completed). Plaintiff paid the 2008 general real estate taxes for his undeveloped lots (approximately $2,000), but he did *not* pay the 2008 SSA tax for his undeveloped lots (approximately $286,867).

¶ 6        As a result of plaintiff's failure to pay the 2008 SSA tax, the county collector pursued the statutory remedy of a tax sale. The statute authorizing SSA taxes states that "[t]he lien and foreclosure remedies provided in Article 9 of the Illinois Municipal Code shall apply upon non-payment of the special tax." 35 ILCS 200/27-75 (West 2008). The Illinois Municipal Code (the Code), article 9, division 2, under which the county levied the SSA tax, states:

> "When the ordinance under which a local improvement is ordered provides that the improvement shall be made wholly or in part by special taxation of contiguous property, that *special tax* shall be levied, assessed, and collected, as nearly as may be, in the manner provided in the section of this Division 2 providing for the mode of making, assessing, and collecting special assessments." (Emphasis added.) 65 ILCS 5/9-2-41 (West 2008).

Under division 2, delinquent special assessments or special taxes may be included in the county collector's annual tax sale. The county collector designates a day on which an application shall be made to the court for an order of sale (65 ILCS 5/9-2-83 (West 2008)), advertises the sale of delinquent taxes (65 ILCS 5/9-2-84 (West 2008)), and mails notice to the delinquent property owners (65 ILCS 5/9-2-88 (West 2008)). Thereupon, the "general revenue laws" of the state, *i.e.*, the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2008)), apply to the unpaid special taxes and to unpaid general taxes, with respect to the annual tax sale. 65 ILCS 5/9-2-97 (West 2008); see also *People v. Taylorville Sanitary District*, 371 Ill. 280, 283 (1939) (legislature intended collection of special taxes to be enforced under general revenue law); *People v. Forest Park Methodist Church*, 408 Ill. 431, 434 (1951) (same). Under this authority, county officials sold the 2008 SSA tax on the farm to a tax lien investment business.

¶ 7        In August 2010, plaintiff filed a three-count complaint, challenging the sale of the 2008 SSA tax. In count I, plaintiff sought a declaratory judgment that *selling the 2008 SSA tax* was not a remedy available to the county in the face of plaintiff's admitted nonpayment of the SSA tax. Plaintiff insisted that the Town of Cortland was required, under article 9, division 3, of the Code, to *foreclose on the tax delinquent parcels*. Skipping to count III, which is closely related to count I, plaintiff sought a writ of *mandamus* to compel the Town of Cortland to foreclose on the tax delinquent parcels. In count II, plaintiff sought an injunction on the sale of SSA taxes based on a partial payment of the total tax obligation (*i.e.*, payment of the general real estate taxes). The trial court dismissed the complaint and denied a motion to reconsider. This appeal followed.

¶ 8                                II. ANALYSIS

¶ 9       Plaintiff challenges the section 2-619 dismissal of his complaint. We review *de novo* the trial court's dismissal. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003).


¶ 10           A. Counts I and III: Remedies Available to Municipality in the Face of
                              Nonpayment of the SSA Tax

¶ 11      Plaintiff argues that selling the 2008 SSA tax pursuant to article 9, division 2, of the Code was not an appropriate remedy in the face of plaintiff's admitted nonpayment of said tax. He does *not* argue that defendants did anything improper under article 9, division 2; he merely seeks a declaration that, instead, the remedies set forth in article 9, *division 3*, of the Code (*i.e.*, foreclosure) should have been followed. Plaintiff's argument presents a question of statutory interpretation, which we review *de novo*. *People v. Robinson*, 217 Ill. 2d 43, 54 (2005). The primary rule of statutory construction is to give effect to the legislature's intent, the best evidence of which is the plain language of the statute. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 181 (2007).

¶ 12      Specifically, plaintiff argues that defendants should have followed section 9-3-41, which states:

          "Whenever any *assessment* has been levied against any real estate, the assessment or installments thereof shall become delinquent the first day of July next after the due date thereof ***. *** Such municipality shall institute proceedings to *foreclose and sell the property* for the payment of any assessment, or installment thereof, remaining delinquent 6 months after the delinquency date. *Any holder of any bond or of any interest coupon is entitled to summary relief by mandamus or injunction to enforce the provisions hereof.*" (Emphases added.) 65 ILCS 5/9-3-41 (West 2008).

¶ 13      Plaintiff argues that, because section 27-75 of the Property Tax Code (35 ILCS 200/27-75 (West 2008)) states that "[t]he lien *and* foreclosure remedies provided in Article 9 of the Illinois Municipal Code shall apply to the non-payment of the special tax" (emphasis added), the collecting municipality is *required* to use foreclosure remedies. There are numerous problems with this argument.

¶ 14      First, there is some question as to whether division 3 even applies. At issue here is the nonpayment of SSA *taxes*. Division 3 refers to assessments–not special taxes. 65 ILCS 5/9-3-41 (West 2008). In contrast, division 2, under which the county sought a remedy, *does* refer to special taxes. 65 ILCS 5/9-2-41 (West 2008). Second, and as is dispositive, the plain language of section 27-75 of the Property Tax Code invites municipalities to use any of the several remedies available under article 9. 35 ILCS 200/27-75 (West 2008). In point of fact, section 27-75 uses the word "remedies," in the plural, contradicting plaintiff's position that a municipality must use the one and only remedy, foreclosing on the property, set forth in division 3. Certainly, there could be many instances where it would not be in either party's best interest to immediately foreclose (either on the tax lien or on the property itself–a distinction plaintiff fails to clearly cite). Even division 3, if it could be said to apply, offers

more than one remedy: "lien *and* foreclosure" remedies. 65 ILCS 5/9-3-41 (West 2008). Moreover, the introductory language of division 3 itself contradicts plaintiff's position that division 3 provides the exclusive remedy: "This Division 3 shall not be construed as repealing any other laws with respect to local improvements [*i.e.*, those set forth in Division 2], but shall be considered as *an additional grant* of power ***." 65 ILCS 5/9-3-1 (West 2008).

¶ 15    Next, plaintiff challenges the trial court's dismissal of count III, wherein, based on his status as a bondholder, he sought a writ of *mandamus* to compel the town to foreclose on the property. Plaintiff is in the unique position of being both an owner of tax delinquent property and a bondholder who would receive the tax proceeds (had they been paid). Again, division 3 provides that bondholders may seek relief for unpaid assessments. 65 ILCS 5/9-3-41 (West 2008) (as quoted above).

¶ 16    A writ of *mandamus* is a summary writ that commands the officer to whom it is addressed to perform a duty that the plaintiff is entitled to have performed and that the party owing the duty has failed to perform. *Illinois Wood Energy Partners, L.P. v. County of Cook*, 281 Ill. App. 3d 841, 852 (1995). A complaint for *mandamus* must set forth all the material facts to demonstrate a clear right to the writ. *Doe v. Carlson*, 250 Ill. App. 3d 570, 573 (1993). The plaintiff has the burden of setting forth every material fact necessary to show the plain duty of the defendant. *Wood Energy*, 281 Ill. App. 3d at 852.

¶ 17    We reject plaintiff's argument on the ground that he cannot establish a "clear right" to relief, as is required in *mandamus* actions. As established above, municipalities are not required to seek a remedy under article 9, division 3, for failure to pay SSA taxes. Therefore, plaintiff does not have a clear right to compel the town or the county to follow article 9, division 3.

¶ 18    The above rationale is dispositive. Therefore, we do not address plaintiff's argument that defendants did not attach an affidavit to a supporting document in their motion to dismiss, *i.e.*, the trust indenture between the town and Wells-Fargo Bank, which preemptively limited bondholders' ability to seek *mandamus*.

¶ 19            B. Count II: Injunction to Compel Acceptance of Partial Payment

¶ 20    Finally, plaintiff challenges the court's dismissal of count II, wherein he sought an injunction to compel defendants to accept a partial payment of his tax obligation (*i.e.*, the general real estate tax but not the SSA tax) and thereby, apparently, postpone the use of article 9 remedies. Plaintiff cites no authority in support of his position, mentions the issue only fleetingly in his initial brief, and completely abandons the issue in his reply brief. Therefore, he has forfeited the argument. Ill. S. Ct. R. 341(h)(7) (eff. Sept. 1, 2006).

¶ 21                            III. CONCLUSION

¶ 22    For the aforementioned reasons, we affirm the trial court's dismissal.

¶ 23    Affirmed.